**Howard R. WARD, Plaintiff-Appellant,**

v.

**NORTHERN OHIO TELEPHONE COMPANY, Defendant-Appellee.**

**No. 14569.**

United States Court of Appeals
Sixth Circuit.

April 3, 1962.

H. Guy Hardy, Cleveland, Ohio (McDonald, Hopkins, Hood & Hardy, Cleveland, Ohio, on the brief), for appellant.

Sidney D. Griffith, Columbus, Ohio (Power, Griffith & Jones, Columbus, Ohio, John R. Eastman, Eastman, Stichter & Smith, Toledo, Ohio, on the brief), for appellee.

Before McALLISTER, CECIL and WEICK, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant Ward is the operator of a radio station duly licensed by the Federal Communications Commission. Appellee telephone company which formerly furnished telephone lines to him to carry radio broadcasts from the source of the program to the transmitter for broadcast, now refuses to continue that service, and claims that it is under no obligation to do so, since it is a company engaged only in intrastate telephone business within the State of Ohio, and subject only to the jurisdiction of the Public Utilities Commission of Ohio. Upon appellant's petition filed against appellee telephone company for damages for refusal to furnish such lines, the district court held that it had no jurisdiction over the subject matter of the claims set forth, and dismissed appellant's petition.

It is contended by appellant that appellee company unlawfully refused to furnish telephone lines to him in his capacity as operator of a radio station transmitting radio for broadcast purposes across state lines; that appellee company, although it has all of its telephone facilities located in only one state, is subject to damages for its refusal to furnish such telephone lines to him, under the provisions of federal statutes; that a federal question was presented to the district court by appellant's petition, setting forth such facts; and that the district court erred in dismissing his petition on the ground that it had no jurisdiction over the subject matter of the claims set forth therein.

Appellee telephone company contends that it is not doing business in interstate commerce as a common carrier engaged in interstate communication; that all of its facilities are located in one state and that it is therefore engaged only in intrastate communication; that it is only a connecting carrier, and, except for limited purposes of accounting and furnishing reports, not relevant in this case, it is not subject to the provisions of the Federal Communications Act which require a telephone company to furnish wire service to radio stations, under which Act appellant brought his suit; and that, in any event, it is specifically exempted from the provisions of the statute which require telephone companies to furnish such wire service.

Title 28 U.S.C.A. § 1337 provides: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Title 47 U.S.C.A. § 201 et seq. provide for the furnishing of interstate and foreign communication by wire or radio, upon reasonable request; prohibits unjust and unreasonable discrimination and preferences; regulates charges to be made for services; provides that such charges or services, whenever referred to in the Act, shall include those in connection with the use of wires in chain broadcasting or incidental to radio communication of any kind; sets forth the carrier's liability for damages for violation of the Act; and provides for actions to recover such damages.[1]

---

1. The relevant portions of Title 47 U.S. C.A. are as follows:
Section 201 provides:
"*Services and charges*—(a) It shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request therefor * * *."
Section 202 provides:
"*Discrimination and preferences*—(a) It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service * * *.
"(b) Charges or services, whenever referred to in this chapter, include charges for, or services in connection with, the use of wires in chain broadcasting or *incidental to radio communication of any kind*." (Emphasis supplied.)
Section 203 provides that every common carrier except connecting carriers must file rates and charges.
Section 204 relates to hearings on charges filed by common carriers.

Section 205 provides for hearings against carriers.
Section 206 provides:
"*Carriers' liability for damages*—In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."
Section 207 provides:
"*Recovery of damages*—Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common

It is agreed that all of the facilities of appellee telephone company are located in the State of Ohio. Nevertheless, it is conceded by appellee company that it is subject to the provisions of Title 47 U.S. C.A. §§ 219–220, inclusive, to the extent that it is required to account to, and render certain requested reports to, the Federal Communications Commission.

Title 47 U.S.C.A. §§ 152 and 153, governing telephone companies engaged in interstate communication, and excepting certain companies from the application of its provisions, is also relevant in the light of certain contentions of appellee.[2]

In spite of a number of issues presented, and the complexities of relevant statutory provisions, there is a single controlling issue in this case; whether a telephone company, with all of its facili-

ties located in one state, engaging only in intrastate telephone communication except for physical connections with carriers in other states, is subject to federal statutes requiring it to furnish telephone lines to radio stations broadcasting across state boundaries.

In the case of In re: Capital City Telephone Company, 3 F.C.C. Reports, 189, the Federal Communications Commission determined one of the main questions raised in this controversy. In that case, the Capital City Telephone Company was located entirely in the State of Missouri and leased its telephone lines to a radio station within the State of Missouri. In its decision, the Commission said:

"Congress was cognizant of the fact that wires were used in connection with broadcasting. The inten-

carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."

2. Section 152 provides:
"*Application*—(a) The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided; but it shall not apply to persons engaged in wire or radio communication or transmission in the Canal Zone, or to wire or radio communication or transmission wholly within the Canal Zone.

"(b) Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier, or (2) any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier, or (3) any carrier

engaged in interstate or foreign communication solely through connection by radio, or by wire and radio, with facilities, located in an adjoining State or in Canada or Mexico (where they adjoin the State in which the carrier is doing business), of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier, or (4) any carrier to which clause (2) or clause (3) of this subsection would be applicable except for furnishing interstate mobile radio communication service or radio communication service to mobile stations on land vehicles in Canada or Mexico; except that sections 201–205 of this title shall, except as otherwise provided therein, apply to carriers described in clauses (2)–(4) of this subsection."
Section 153 provides:
"*Definitions*—For the purposes of this chapter, unless the context otherwise requires— * * *
"(h) 'Common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier. * * *
"(u) 'Connecting carrier' means a carrier described in clauses (2), (3), or (4) of Section 152(b) of this title. * * *"

tion of Congress to clothe the Federal Communications Commission with jurisdiction over charges and services for wires used in radio communication is evidenced by Section 202(b) which reads: 'Charges or services, whenever referred to in this Act, include charges for or services in connection with the use of wires in chain broadcasting or incidental to radio communication of any kind.'

"The fact that the wires used to carry the program from the microphone to the transmitter may be confined to a single state does not mean that the wires are not used in interstate communication. The contract or leasing arrangement may be for a wire service which begins and ends within a single state. *The complete transmission, however, is an interstate communication and is therefore subject to legislation by Congress under the commerce clause.* * * *

"In view of the express provisions of the Communications Act relative to the use of wires in connection with broadcasting, it is indisputable that Congress has legislated on that question. It is a well established rule of constitutional interpretation that when Congress has legislated on a subject which is within its jurisdiction, such legislation is exclusive and the power therein granted by Congress is exclusive of all other powers. * * *

"The interstate communication of a broadcasting company begins at the microphone, passes over the wires to the transmitter, and then through the ether, constituting a continuous interstate communication which, because of its very nature, must be subject to federal regulations. * * *

"This Commission has exclusive regulatory jurisdiction over wires and wire service furnished by a telephone carrier to a radio broadcasting station, even though such wires do not cross state or national boundaries." (Emphasis supplied.)

■■ Where lines, therefore, are furnished for broadcast purposes to a radio station by a telephone company, the telephone company is engaged in interstate communication, and is in interstate commerce, subject to federal law, even where all the property of the company is located within a single state. "No state lines divide the radio waves, and national regulation is not only appropriate but essential to the efficient use of radio facilities." Federal Radio Commission v. Nelson Brothers Bond and Mortgage Company, 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166. Radio communication is interstate communication; and although all its facilities are located in one state, and although it is a connecting carrier, a telephone company, required to furnish lines to a radio station, on reasonable request, is considered a common carrier engaged in interstate communication. Such a common carrier, engaged in such interstate communication, is subject to the Federal Communications Act, including the sections providing for remedial action to be brought in the district court because of a violation of the Act. The conclusion therefore follows that, under these statutes, appellee telephone company, insofar as the furnishing, or obligation to furnish, wires for broadcast purposes, is engaged in interstate commerce; and that it is under a duty to furnish such communication service by the use of wires to appellant either in chain broadcasting, or incidental to radio communication of any kind.

Appellee telephone company contends that it does not come under Title 47 U.S. C.A. §§ 206 and 207, heretofore referred to, which provide for the carrier's liability for damages and suit for recovery thereof, since it is not a "common carrier", subject to the provisions of this chapter, and that it is subject to the Act only for accounting and reporting services. Appellee further submits that the foregoing statutory sections do not apply to it, as it carries on only intrastate business.

In support of its contentions, appellee refers to the fact that Title 47 U.S.C.A. § 153(u) defines "common carrier" or "carrier" as any person engaged as a common carrier for hire in interstate or foreign communication by wire or radio, or in interstate or foreign radio transmitting of energy, except where reference is made to common carriers not subject to the Act; and that the statute defines "connecting carrier" as a carrier engaged in interstate communication only through physical connection with another carrier in an adjoining state.

It is claimed, by virtue of the foregoing, that appellee company is not a "common carrier" within the meaning of the Act, since it is not engaged in interstate commerce, but only in intrastate communication. It is submitted, rather, that, under the above statute, appellee company is only a "connecting carrier" as distinguished from a "common carrier"; and that a connecting carrier not engaged in interstate communication is not subject to the provisions of the federal statute requiring it to furnish wire communication service to a radio station. It is therefore contended that appellee, not being a common carrier engaged in interstate communication, is not subject to the provisions of the statute requiring a telephone company to furnish wire communication service to a radio station.

Appellee company argues that under Title 47 U.S.C.A. § 152(b), it is specifically excepted from the application of the statute. This contention stems from the following: the above provision of the statute sets forth that nothing in the Act shall be construed to apply or to give the [Federal Communications] Commission jurisdiction with respect to (1) charges, services, or facilities in connection with intrastate communication by wire or radio of any carrier, or (2) any carrier engaged in interstate communication solely through physical connection with the facilities of another carrier; or (3) any carrier engaged in interstate communication solely through physical connection by radio, or wire and radio, with facilities located in an adjoining state. It is, how-

ever, to be emphasized that at the conclusion of Section 152(b), it is provided that Sections 201–205 of the Act shall apply to carriers described in subsections (2) and (3).

When we examine the above-mentioned exception in the statute, we find that Sections 201–205 of the Act, relating to services, charges, unlawful discriminations, and preferences apply to any carrier, which is engaged in interstate communication solely through physical connection with the facilities of another carrier, or to any carrier, which is engaged in interstate communication solely through connection by radio, or by wire and radio, with facilities of another carrier located in an adjoining state.

Appellate telephone company is, therefore, not excepted from the jurisdiction of the Federal Communications Commission or from the statute giving a right of action for refusing to furnish wire service to a radio station.

It is our conclusion that appellee telephone company is subject to Title 47 U.S.C.A. § 207, which provides, as heretofore stated, that an action can be brought in any district court of competent jurisdiction against common carriers engaged in interstate communication solely through physical connection, or connection by radio, or by wire and radio, with facilities of another carrier in an adjoining state, for failure to supply wire services, since such carriers, even though defined as connecting carriers, are subject to Sections 201–205 of Title 47 U.S.C.A.

All of the provisions of the Act, as well as the subject matter with which it is concerned, regarding the duties and liabilities of such a carrier as appellee telephone company, would be futile without the remedial provisions setting forth a right to damages for violation thereof and the method of enforcing such right. It would be unreasonable to hold that appellee company is subject to the duties and liabilities set forth in the statute but that it is not subject to the provisions for enforcement of the rights which the company may see fit to violate; and

we see no reason to conclude that, while appellee company is subject to Sections 201–205, inclusive, of the Act, it is not subject to Sections 206–207, inclusive.

It is our conclusion, therefore, that the district court had jurisdiction over the subject matter of the claims set forth in the petition.

In accordance with the foregoing, the order of dismissal is set aside, and the case remanded for a hearing on the merits.