HAMILTON COUNTY TELEPHONE COMPANY, A CORPORATION, APPELLANT, V. NORTHWESTERN BELL TELEPHONE COMPANY, A CORPORATION, ET AL., APPELLEES, NEBRASKA EDUCATIONAL TELEVISION COMMISSION, INTERVENER-APPELLEE.

140 N. W. 2d 834

Filed March 18, 1966.   No. 36098.

Hal B. Hasselbalch and Wallace M. Rudolph, for appellant.

William I. Aitken, Bert L. Overcash, John A. Anderson, H. A. Poley, and Edward Sklenicka, for appellees.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for intervener-appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and KOKJER, District Judge.

BOSLAUGH, J.

This is an appeal from an order of the Nebraska State Railway Commission dismissing a formal complaint filed

by the Hamilton County Telephone Company against the Northwestern Bell Telephone Company and The Lincoln Telephone and Telegraph Company as defendants.

The complaint alleged that the defendants had entered into a contract to furnish interconnecting channels and associated equipment to the Nebraska Educational Television Commission; that the defendants had not applied for or obtained a certificate of convenience and necessity from the railway commission; that the contract called for a consolidation of telephone properties; and that the contract would combine the capital and facilities of the defendants and that some services would be furnished at below cost, all in violation of sections 59-801 and 59-805, R. R. S. 1943.

The defendants' answer alleged in detail the history of the Nebraska Educational Television Commission, its invitation to bidders to furnish interconnecting channels for its system, and the contract which had been entered into by the defendants and the Nebraska Educational Television Commission. The answer denied the allegations of the complaint and specifically alleged that the railway commission had no jurisdiction over the matters alleged in the complaint. The defendants also filed a motion for summary judgment.

The Nebraska Educational Television Commission intervened in the proceeding and alleged that the complaint should be dismissed for lack of jurisdiction.

The defendants' motion for summary judgment was overruled. Motions for rehearing and motions to dismiss were then filed. These motions were sustained, the previous order set aside, and the complaint dismissed. The complainant filed a motion for rehearing which was overruled, and it has appealed.

The railway commission found that the interconnecting channels to be furnished by the defendants to the Nebraska Educational Television Commission were to be used exclusively in interstate commerce and were under

the exclusive jurisdiction of the Federal Communications Commission; that the railway commission had no jurisdiction over their construction, location, and maintenance; and that the defendants were not required to obtain a certificate of convenience and necessity from the railway commission. This is the primary and controlling issue in the case.

The record shows that the programs of the educational television system will originate in studios located in Lincoln and Omaha, Nebraska. The programs will be broadcast from transmitters constructed at seven locations throughout the state. The connecting facilities between the studios and the transmitters are to be furnished to the educational television commission by common carriers upon a leased basis. The contract which the defendants have entered into with the educational television commission is a contract to furnish connecting facilities between the studios and the transmitters.

The complainant contends that the service which the defendants have contracted to furnish is essentially a telephone service; that it is intrastate because all of the facilities will be located within this state; and that the railway commission has the same jurisdiction over the facilities that it has over any other telephone service.

The defendants and the intervener contend that broadcasting is interstate commerce and under the exclusive jurisdiction of the Federal Communications Commission; that the interconnecting facilities which the defendants have contracted to furnish are an integral part of broadcasting; and that the railway commission has no jurisdiction over the facilities.

The cases which have considered this question sustain the contention of the defendants and the intervener. In re Capital City Telephone Co., 3 F. C. C. 189, involved the jurisdiction of the Federal Communications Commission over a telephone company furnishing wire service to a radio station for broadcasting purposes. The commission said: "The principle is now well established

that radio communication, including broadcasting, is essentially interstate communication. As the Supreme Court said in Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U. S. 266, 77 L. ed. 1166: 'No state lines divide the radio waves, and national regulation is not only appropriate but essential to the efficient use of radio facilities.' * * * Congress was cognizant of the fact that wires were used in connection with broadcasting. The intention of Congress to clothe the Federal Communications Commission with jurisdiction over charges and services for wires used in radio communication is evidenced by Section 202 (b), which reads: Charges or services, whenever referred to in this Act, include charges for or services in connection with the use of wires in chain broadcasting or incidental to radio communication of any kind.

"The fact that the wires used to carry the program from the microphone to the transmitter may be confined to a single state does not mean that the wires are not used in interstate communication. The contract or leasing agreement may be for a wire service which begins and ends within a single state. The complete transmission, however, is an interstate communication and therefore subject to legislation by Congress under the Commerce Clause. * * * The interstate communication of a broadcasting company begins at the microphone, passes over the wires to the transmitter, and then through the ether, constituting a continuous interstate communication which, because of its very nature, must be subject to federal regulations.

"Viewing the Communications Act as a whole, it is logical to conclude that Congress intended that a connecting carrier could furnish wires and wire service to broadcast companies without changing its status as a connecting carrier, since the specific section with reference to the furnishing and use of wires in connection with radio communication is contained in the sections made applicable to such connecting carriers.

"This Commission has exclusive regulatory jurisdiction over wires and wire service furnished by a telephone carrier to a radio broadcasting station, even though such wires do not cross state or national boundaries."

Ward v. Northern Ohio Telephone Co., 300 F. 2d 816, was a suit for damages by the operator of a radio station against a telephone company which refused to furnish wire service to carry radio broadcasts from the source of the program to the transmitter for broadcast. In holding that the action was within the jurisdiction of the United States District Court, the Court of Appeals said: "Where lines, therefore, are furnished for broadcast purposes to a radio station by a telephone company, the telephone company is engaged in interstate communication, and is in interstate commerce, subject to federal law, even where all the property of the company is located within a single state. 'No state lines divide the radio waves, and national regulation is not only appropriate but essential to the efficient use of radio facilities.' Federal Radio Commission v. Nelson Brothers Bond and Mortgage Company, 289 U. S. 266, 53 S. Ct. 627, 77 L. Ed. 1166. Radio communication is interstate communication; and although all its facilities are located in one state, and although it is a connecting carrier, a telephone company, required to furnish lines to a radio station, on reasonable request, is considered a common carrier engaged in interstate communication. Such a common carrier, engaged in such interstate communication, is subject to the Federal Communications Act, including the sections providing for remedial action to be brought in the district court because of a violation of the Act. The conclusion therefore follows that, under these statutes, appellee telephone company, insofar as the furnishing, or obligation to furnish, wires for broadcast purposes, is engaged in interstate commerce; and that it is under a duty to furnish such communication service by the use

of wires to appellant either in chain broadcasting, or incidental to radio communication of any kind."

The principles announced in these cases were reaffirmed in a recent decision of the Federal Communications Commission. In re Application of Pacific Telatronics, Inc., 37 F. C. C. 1163. That case involved an application to construct and operate common carrier microwave facilities in California which were to be used to carry commercial and educational television signals. The application was opposed by the Pacific Telephone & Telegraph Company which alleged that the service was intrastate in nature, and that the applicant had not obtained a certificate of convenience and necessity from the California Public Utilities Commission. In regard to this contention the commission said: "PT&T's contention that Pacific requires prior approval from the State of California might be significant if the service Pacific proposes is intrastate in nature. On the other hand, if the proposed service is intrastate (interstate) in nature, then no prior State authorization is required, since the FCC has exclusive jurisdiction over interstate common carrier communication services unless specifically exempted by the Communications Act of 1934, as amended. * * * Pacific's facilities are used to carry television signals which are interstate in nature. It is our conclusion that the type of common carrier service which Pacific proposes to provide is an extention of, and incidental to, the broadcasting of television signals, and, therefore, is incidental to radio communication as defined in the Communications Act. Accordingly, its services are interstate communication services subject to our jurisdiction under title II of the act. * * * Neither the act nor the rules require certification by a State public utilities commission as a prerequisite to operation as an interstate microwave communications common carrier. Accordingly, we conclude that additional legal authority from the California State Public Utilities Commission is unnecessary and that PT&T's position is without merit."

See, also, California Interstate Telephone Co. v. Federal Communications Commission, 328 F. 2d 556.

The interconnecting facilities which the defendants have contracted to furnish to the Nebraska Educational Television Commission will be used in interstate communication and are not subject to the jurisdiction of the Nebraska State Railway Commission. The order of the railway commission dismissing the complaint is affirmed.

AFFIRMED.